## Case No. 9,049.

### In re MANSFIELD.

[6 N. B. R. 388.] [1]

### District Court, D. Louisiana. 1872.

BANKRUPTCY — DISCHARGE — DEBT PROVABLE — ELECTION—ASSIGNMENT—RES JUDICATA.

A gave his bond to the United States as security for a certain claim against a vessel. The cause was tried and a decision adverse to the United States rendered. Additional evidence was produced in the circuit court, on appeal, and the decision of the district court was reversed, and a decree of condemnation rendered on the twenty-seventh of May, eighteen hundred and seventy. While proceedings were pending in the circuit court, A. filed his petition in bankruptcy, and was, on the thirtieth day of June, eighteen hundred and sixty-nine, discharged from all his debts dischargeable under the bankrupt act [of 1867 (14 Stat 517)]. On the eighth of June, eighteen hundred and seventy, the circuit court overruled A's plea of discharge in bar of the claim. and gave judgment against him on the release bond. On the twenty-first of April, eighteen hundred and seventy-one. the secretary of the treasury, for a valuable consideration, transferred the judgment to B., who. on the twenty-seventh of May, eighteen hundred and seventy-one, filed a petition to set aside A's discharge. Held, that when the United States elected to take judgment upon the bond they parted with all right to prove it as a debt due and payable from the bankrupt at the time of the adjudication of bankruptcy, and as a debt to be proved against the estate; that it is res judicata that this debt is not affected by the discharge, as the judgment is subsisting and operative. Exception sustained and the petition dismissed.

[Cited in Bourne v. Maybin, Case No. 1,700.]
[Cited in Boynton v. Ball, 105 Ill. 630. Cited in brief in Bowen v. Eichel, 91 Ind. 26.]

In bankruptcy.

J. S. Whittaker, for petitioner.

R. De Gray and J. A. Campbell, for Mansfield.

DURELL, District Judge. On the twenty-third day of March, eighteen hundred and sixty-five, a suit entitled "U. S. v. The Rob Roy" [Case No. 16,179,] was instituted in the then United States district court for the Eastern district of Louisiana, wherein it was sought to forfeit said steamboat and cargo of one thousand one hundred and forty bales of cotton as enemies' property, because said property had been sought for, obtained, and brought on board said steamboat from within territory held in occupation by armed enemies of the United States, "declared to be in a state of insurrection." The boat and cargo were seized, and subsequently released on bond to one A. S. Mansfield, the claimant thereof. The cause was tried in this court, and a decision rendered therein adverse to the United States. Additional evidence having been produced in the cir-

---

[1] [Reprinted by permission.]

cuit court, on appeal, the decision of the district court was reversed, and a decree of condemnation rendered on the twenty-seventh day of May, eighteen hundred and seventy. In the meantime, and while said proceedings were being had in the circuit court, to wit: on or about the first of June, eighteen hundred and sixty-eight, said Mansfield filed his petition in this court, praying to be adjudged a bankrupt, and was so adjudged on the ninth day of June, eighteen hundred and sixty-eight. On the thirtieth day of June, eighteen hundred and sixty-nine, said Mansfield was, in due course of law, discharged from all debts dischargeable under the bankrupt act. On the third day of May, eighteen hundred and seventy, said Mansfield filed in the circuit court the following plea, in bar, to the suit of U. S. v. The Rob Roy [supra], then pending in said court, to wit: "And the said A. S. Mansfield, by his attorneys, avers that, on the thirtieth day of June, eighteen hundred and sixty-nine, a discharge was granted him in the words and figures set forth in the duly certified copy of the decree hereto annexed, and made part hereof; and he pleads said discharge as a full and complete bar to this suit wherefore he prays judgment, if the said United States ought to have or maintain the aforesaid action against him."

On the twenty-seventh day of May, eighteen hundred and seventy, the judgment of the district court was reversed, the libel sustained, and the Rob Roy and cargo condemned as forfeited to the United States. This judgment fixed the liability of Mansfield under the release bond. On the eighth day of June, eighteen hundred and seventy, the circuit court overruled Mansfield's plea in bar, and gave judgment against him upon the release bond for the sum of two hundred and four thousand nine hundred and eighty-two dollars and twenty-nine cents, with five per cent. interest thereon from the twenty-fourth of March, eighteen hundred and sixty-five, till paid, and cost of suit. On the twenty-first day of April, eighteen hundred and seventy-one, George S. Boutwell, secretary of the treasury of the United States, for and in consideration of the sum of twenty thousand dollars paid into the treasury of the United States, transferred this second judgment in favor of the United States to Stewart Q. Cochrane, who, by motion, entered and filed in the circuit court, on the twenty-seventh day of May, eighteen hundred and seventy-one, caused himself to be subrogated to all the right, title, and interest of the United States in and to said judgment. On the same twenty-seventh of May, eighteen hundred and seventy-one, Cochrane filed a petition in this court in the matter of Asahiel S. Mansfield, a bankrupt, to set aside Mansfield's discharge.

It is not necessary to enumerate the many allegations made and contained in said petition, nor to notice the exceptions taken and answers filed by Mansfield in avoidance of and responsive thereto, except as to the one question: Was the debt set forth in the petition of S. Q. Cochrane provable in the bankruptcy of A. S. Mansfield? Section thirty-four of the bankrupt act provides, "that any creditor or creditors of said bankrupt, whose debt was proved or provable against the estate in bankruptcy, who shall see fit to contest the validity of said discharge on the ground that it was fraudulently obtained, may, at any time within two years after the date thereof, apply to the court which granted it to set aside and annul the same." Under this section Cochrane's petition was filed. Section nineteen provides, "that all debts due and payable from the bankrupt at the time of the adjudication of bankruptcy, and all debts then existing, but not payable until a future day, a rebate of interest being made, where no interest is payable by the terms of the contract, may be proved against the estate of the bankrupt."

Mansfield was adjudicated a bankrupt on the ninth day of June, eighteen hundred and sixty-eight. A decree was entered granting him his discharge on the thirtieth day of June, eighteen hundred and sixty-nine. During all this time, the suit of "the United States against the Rob Roy and her cargo," was pending in the circuit court. It is to be remembered that judgment was rendered in the district court against the United States and in favor of Mansfield, the claimant restoring to him the property libelled, and that said judgment was reversed in the appellate court, on the production of evidence not produced in the lower court. Certainly, during the pendency of the appeal in the circuit court, and until the Rob Roy and cargo were adjudged forfeited to the United States, on the twenty-seventh day of May, eighteen hundred and seventy, there was no semblance of any indebtedness due from Mansfield to the United States, which could have been proved against Mansfield's estate, on the ninth day of June, eighteen hundred and sixty-eight, the day on which he was adjudicated a bankrupt. Further, the judgment rendered on the twenty-seventh day of May, eighteen hundred and seventy, was not a personal judgment against Mansfield, condemning him to pay any certain sum of money, but a judgment against the Rob Roy and cargo, as forfeited to the United States. In order to obtain a judgment against Mansfield, further proceedings were to be had; and, accordingly, the conditions of the release bond not being complied with, further proceedings were taken upon the bond, which proceedings ripened into a judgment rendered against Mansfield and his sureties in favor of the United States, on the eighth day of June, eighteen hundred and seventy, for two hundred and four thousand nine hundred and eighty-two dollars and twenty cents. It is this judgment which the peti-

tioner, S. Q. Cochrane, holds by assignment from the United States, and which he alleges to be a debt provable in bankruptcy against the estate of A. S. Mansfield, on the ninth day of June, eighteen hundred and sixty-eight. It will be seen that Cochrane is not the assignee of the release bond given by Mansfield to the United States, but the assignee of the judgment rendered thereon in favor of the United States, which are two very different things. The nineteenth section of the statute says: "If the bankrupt shall be bound as drawer, indorser, surety, bail, or guarantor upon any bill, bond, note, or any other specialty or contract, or for any debt of another person, and his liability shall not have become absolute until after the adjudication of bankruptcy, the creditor may prove the same, after such liability shall have become fixed, and before final dividend shall have been declared." Now, if we concede that under this clause of the nineteenth section of the statute the liability of Mansfield, as the maker of the release bond, became fixed on the rendition of the judgment of condemnation and forfeiture of the Rob Roy and her cargo, and the noncompliance with the conditions of the release bond, and that the United States might have proved the same against the estate of the bankrupt, yet such concession does not involve the application of the same proposition to the subsequent judgment obtained upon the bond, on the eighth of June, eighteen hundred and seventy, and now held by the petitioner, Cochrane.

Mansfield filed in the circuit court, on the eight of May, eighteen hundred and seventy, a plea in bar founded upon his certificate of discharge. The court, for reasons orally given, overruled the same. Certainly the plea was not a good one if it was intended to bar the right of the United States, under the clause cited from the nineteenth section of the statute, to fix Mansfield's liability upon the release bond given by him March twenty-fourth, eighteen hundred and sixty-five. Neither was the plea in bar a good plea in bar of a judgment sought to be obtained upon the bond, where the creditor elects not to proceed under the clause cited from the nineteenth section of the statute, but to enforce his claim against the bankrupt personally as a debt due upon a liability, which has become fixed long after the bankrupt's surrender and adjudication thereon. The United States elected to pursue the latter course. Let us now see what are the legal consequences of such election:

"When a creditor obtains from his debtor a security of a higher nature than he had before, the original debt is merged in the higher security, and can no longer be made the foundation of any action or suit, or of proof in bankruptcy or insolvency." Lindl. Partn. 368; 10 C. B. 561; Wells & Leovy, 3 McM. & G. 378.

This doctrine has been repeatedly held in Louisiana. In Oakey v. Murphy, 1 La. Ann. 372, the court said: "In this case, which is an action by the holder of a promissory note against the maker, the plaintiff filed a supplemental petition, in which he alleged that a judgment had been rendered in his favor, at the time of the institution of his suit, on the note sued on in the circuit court of the United States for the Southern district of Mississippi. On a judgment by default being taken, it was confirmed on the evidence of this judgment rendered in Mississippi. So far from this judgment proving the right of the party to recover on the note, it establishes the reverse, inasmuch as it is a merger of the note. The plaintiff has lost his right of action on the note, and he has no right to amend his petition by an allegation which extinguishes it." The court refers to 9 La. Ann. 419; 2 Mart. (N. S.) 599; and 3 Bl. Comm. 398. See, also, 7 La. Ann. 334; 12 La. Ann. 738.

In Re Williams [Case No. 17,705], the learned judge for the district of Connecticut held, "that a debt, upon which a judgment of law is founded, is merged in the judgment and extinguished by it," citing 27 Me. 441; 32 Me. 418; 2 Cush. 173; 2 Denio, 17, 72; and 11 Cush. 25; 17 Conn. 580. The authorities cited sustain the learned judge in the conclusion to which he arrives. See, also, 6 Hill, 255, where the court says: "The defendant has been discharged, under the bankrupt law, from all debts which he owed at the time he presented his petition. Subsequent to that time the cognovit was given, and the judgment recovered. The original debt has been merged and extinguished by the judgment. The judgment is a new debt, which is not affected by the discharge." Bacon says: "If a bond creditor obtains a judgment on the bond, or has judgment acknowledged to him, he cannot afterward bring an action on the bond, for the debt is drowned in the judgment, which is a security of higher nature than the bond." Extinguishment (D), citing 6 Coke, 40. The authority cited is Higgins' Case, wherein Lord Coke says: "It was objected that if a man recovers debt on a bond, or rent on a lease for years, it is at the plaintiff's election to sue execution on that judgment, or to have a new action." But it was resolved "that so long as the judgment remains in force he cannot have a new action on the same bond, for, as he who has a debt by simple contract, and takes a bond for the same, or any part of it, the contract is determined, so when a man has a debt on a bond, and by ordinary course of law has judgment thereon, the contract, by specialty, which is of an inferior nature, is by judgment of law changed into a matter of record, which is of a higher nature." The latest authority of the highest court of our country is to be found in 6 Wall. [73 U. S.] 234, in the case of Mason v. Eldred. Field, J., the organ of the court, there says: "If the note in suit was merged in the judgment, then

the judgment is a bar to the action, and an exemplification of its record is admissible, for it has long been established that, under the plea of the general issue in assumpsit, evidence may be received to show, not merely that the alleged cause of action never existed, but also to show that it did not subsist at the commencement of the suit." And again, at page 238: "The general doctrine maintained in England and the United States may be briefly stated. A judgment against one upon a joint contract of several persons bars an action against the other, though the latter were dormant partners of the defendant in the original action and this fact was unknown to the plaintiff when that action was commenced. When the contract is joint, and not joint and several, the original cause of action is merged in the judgment. The joint liability of those not sued with those against whom judgment is recovered being extinguished, their entire liability is gone." Indeed, the whole opinion there reported is an able review of the decisions of the state and United States courts upon this most interesting question of doctrine of the law. Counsel for the petitioner, Cochrane, has cited in his brief, opinions adverse to the conclusion at which I have arrived. Opinions to be found in Re Brown [Case No. 1,975]; Re Vickery [Id. 16,930].

But however great may be my respect for my Brothers of the Eastern and Western districts of Michigan and of the Southern district of New York, I cannot readily yield a doctrine which is supported by a long line of decisions, commencing with the year books cited by Lord Coke, and coming down to this day. When, therefore, on the eight day of June, eighteen hundred and seventy, the United States elected to take judgment upon the bond, they parted with all right to prove the bond as a debt due and payable from the bankrupt at the time of the adjudication of bankruptcy, and as a debt to be proved against the estate of the bankrupt. Cochrane, the petitioner, and assignee of the judgment, cannot be held to be conditioned otherwise than was his assignor with regard to the same. It is res judicata that his debt is not affected by the discharge. It has been pleaded, and the decision made in his favor. This judgment is subsisting and operative. What title, then, has he to impeach an act of the court in which he was no wise concerned, and by which he is in no manner injured. The exception must be sustained and the petition dismissed.

---

MANSFIELD (MASON v.). See Case No. 9,243.

MANSFIELD, C. & L. M. R. CO. (SCOTT v.). See Case No. 12,541.

MANSON (CLARKSON v.). See Case No. 2,867.

MANTON (LANSING v.). See Case No. 8,077.

MANTON, The HERBERT. See Cases Nos. 6,399 and 7,319.

MANTOR (UNITED STATES v.). See Case No. 15,719.